IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RALPH REGINALD CAIN,

    Plaintiff,

v.                                                CASE NO. 4:13-cv-77-MW/CAS

SHELL OIL CO. and
CIRCLE K STORES, INC.,

    Defendants.
_____/

## ORDER DENYING CIRCLE K STORES, INC.'S
## MOTION FOR SUMMARY JUDGMENT

This is a premises liability claim arising out of a shooting which occurred in the early morning hours of July 10, 2010 at a Circle K convenience store located at 2807 South Monroe Street in Tallahassee, Florida (the "store"). At the time of the incident, Plaintiff Ralph Reginald Cain ("Mr. Cain") was at the store to purchase gas and was shot multiple times when a gunfight broke out in the parking lot. Defendant Circle K Stores, Inc. ("Circle K") has moved for summary judgment arguing that the shooting was not foreseeable as a matter of law, and thus it cannot be held liable for the independent act of an unknown third party. This is particularly true, Circle K argues, because it is entitled to a presumption against liability pursuant to section 768.0705, Florida Statutes. Upon consideration of the

1

parties' papers[1] and exhibits and for the reasons discussed below, this Court denies summary judgment concluding that the question of foreseeability is a question of fact for the jury.

The foreseeability of a particular harm is a question of law for the court for purposes of determining duty but is generally a question of fact for the jury for purposes of determining proximate causation. *See, e.g.*, *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992) ("Unlike in the 'duty' context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve."). The Florida Supreme Court has explained:

> [H]arm is 'proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question. In other words, human experience teaches that the same harm can be expected to recur if the same act or omission is repeated in similar context. However, . . . it is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its *exact* extent. In such instances, the true extent of the liability would remain questions for the jury to decide.
>
> On the other hand, an injury caused by a freakish and improbable chain of events would not be 'proximate' precisely because it is unquestionably unforeseeable, even where the injury may have arisen from a zone of risk. The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experiences. Thus, . . . a trial court has discretion to remove the issue from the jury if, 'after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm.'

---

[1] Counsel for Mr. Cain appears to have mistakenly filed the same response in opposition to the motion twice, ECF Nos. 58 and 61 respectively.

*Id.* at 503-04 (internal citations omitted). *Accord Palma v. BP Products N.A., Inc.*, 594 F. Supp. 2d 1306, 1309-10 (*quoting McCain*). *See also Roberts v. Shop & Go, Inc.*, 502 So. 2d 915, 917 (Fla. 2d DCA 1986) ("We recognize that the 'foreseeability' of an intervening causation is frequently a question to be determined by the trier of fact, but it may also be determined as a matter of law in the circumstance where . . . the intervening act is merely 'possible' rather than 'probable.'" (internal citations omitted)).

Circle K urges this Court to grant summary judgment suggesting that Mr. Cain's injuries were caused by a freakish and improbable chain of events and, as such, his injuries were utterly unpredictable in light of common human experiences. And, that's the nub of this case. Considering the evidence in the light most favorable to Mr. Cain, as I must, was the shootout resulting in his injuries so freakish and improbable that Circle K is entitled to judgment as a matter of law?

The store is located in a high crime area. Circle K's own loss prevention and risk manager, Gerald Bailie, conceded that he recommended that the store be permanently operated with enhanced security measures prior to the shooting; namely, requiring there be two employees on duty during certain hours. He acknowledged that closing the store during certain hours was an enhanced security measure which Circle K chose not to implement. Mr. Bailie also conceded that he was contacted by the Tallahassee Police Department ("TPD") prior to the shooting.

3

Specifically, TPD contacted Circle K to express concerns regarding issue of crowd control at the store. When nearby bars and clubs closed in the early morning hours, the patrons were relocating to the Circle K parking lot. TPD requested, and received permission from Circle K, to "basically shut the store down, turn the lights out, and they would have officers in the area in hopes that the crowd would just move past the" store. Circle K did not close the store unless TPD so requested. However, Mr. Bailie acknowledged that the store manager had the authority to shut down the store and turn out the lights independent of any such request.

A former Circle K employee working at the store at the time of the shooting, Rickia Hush Mathis, testified that "let out" crowds accumulated in the store's parking lot every Friday and Saturday night around 2 to 3 a.m. after nearby bars and clubs closed. Ms. Mathis also testified that she repeatedly contacted the store manager to remind him of the let outs and to request security to control the crowd; she repeatedly called the police department to remind them of the let outs and to request an officer ride by; she asked the store manager on a number of occasions if she could close the store for a couple hours until the let out crowd dispersed but he refused; she frequently smelled marijuana and saw open alcohol containers in the store's parking lot during the let outs; the let out crowd was so thick that customers had difficulty or were unable to park in the store's parking lot or access the gas

4

pumps; customers complained about the loud music being played and reported threats of fights; and while she had no personal knowledge of any violent crimes taking place at the store itself, there had been a homicide directly across the street at a McDonalds before the shootout resulting in Mr. Cain's injuries. Finally, Ms. Mathis testified that there were approximately 60 to 70 cars and roughly 220 people in the parking lot on the night of the shooting and she called the store manager asking cut out the lights until the crowd dispersed but he refused stating "[y]ou're losing money, and Circle K does not like to lose money."

In sum, the store was located in a high crime area. Circle K recognized the need for enhanced security measures at the store and implemented enhanced security measures for the safety of its employees; namely requiring there be two employees on duty during certain hours. TPD specifically contacted Circle K about the problem with crowds gathering at the store in the early morning hours after nearby bars and clubs closed. TPD suggested an enhanced security measure recognized by Circle K's own loss prevention and risk manager; namely, closing the store until the crowds dispersed. The crowds were composed of people who had been drinking at bars and continued to drink and smoke marijuana in the parking lot. Moreover, the crowds were so large, more than 200 people, so as to create a logjam where cars could not get into and of out the parking lot. One of Circle K's own employees repeatedly complained to management that the crowds

5

were dangerous and reported threats of fights. And, prior to the shooting at issue, there had been a shooting at the McDonalds across the street from the store where the same crowds gathered when the bars and clubs closed.

Under these facts, this Court finds that the shootout resulting in Mr. Cain's injuries was not so freakish and improbable that Circle K is entitled to judgment as a matter of law. Stated otherwise, Mr. Cain has presented sufficient facts for a reasonable jury to find that the shooting was foreseeable and not merely a freakish, improbable, or extraordinary event. *See Hall v. Billy Jack's, Inc.*, 458 So. 2d 760, 761-62 (Fla. 1984) ("Foreseeability may be established by proving that a proprietor has actual or constructive knowledge of . . . a dangerous condition on his premises that was likely to cause harm to a patron. A dangerous condition may be indicated if, according to past experience (i.e., reputation of a tavern), there is a likelihood of disorderly conduct by a third person in general which might endanger the safety of patrons or if security staffing is inadequate. These indicia are not exhaustive. . . . The question of foreseeability is for the trier of fact." (internal citations omitted)); *Allen v. Babrab, Inc.*, 438 So. 2d 356, 357-58 (Fla. 1983) ("The Gemini Club had a history of fighting and other disturbances. . . . Despite urgings to the corporate officers by the bartenders that . . . security was needed, no such [security] was on duty the night of Pearl Allen's assault. The evidence was sufficient for the jury to reasonable find that Babrab should have known of the likelihood of injury to

6

patrons caused by disorderly conduct on the part of third parties in general and failed to do anything about it."); *Stevens v. Jefferson*, 436 So. 2d 33, 35 (Fla. 1983) ("A tavern owner's actual or constructive knowledge, based upon past experience, that there is a likelihood of disorderly conduct by third persons in general which may endanger the safety of his patrons is . . . sufficient to establish foreseeability. . . . . It is incumbent upon the plaintiff to prove legal causation. [The plaintiff] met her burden by showing that the bar was a 'rough' place with a history of fights and gunplay and that the owner had terminated all security service and left the premises in the charge of a female employee who could not maintain order. Under these facts, a jury could determine that a foreseeable risk of harm to patrons existed, that the risk was either created or tolerated by [the defendant], that he could have remedied the danger but failed to do so, and that because of that failure to perform his duties [the plaintiff] was killed.").

The cases relied on by Circle K are readily distinguishable inasmuch as those cases involved random tortious acts in which the defendants had no warning of the potential risk. *See, e.g.*, *Palma*, 594 F. Supp. 2d at 1310-11 (finding that the attack on the plaintiff when he confronted the tortfeasor regarding a traffic accident in the defendant's parking lot was not foreseeable to the defendant); *Roberts*, 502 So. 2d at 918 (finding that the tortfeasor's act of buying gas from the defendant

only to walk across the street and set another person on fire was not foreseeable to the defendant).

Finally, it is no answer that Circle K is entitled to a presumption against liability pursuant to section 768.0705, Florida Statutes, because it substantially implemented the security measures set forth sections 812.173 and 812.174, Florida Statutes. Assuming arguendo it was undisputed that Circle K substantially implemented such security measures and is entitled to a presumption, the presumption is rebuttable and has been rebutted by the facts detailed above for purposes of summary judgment.

For these reasons,

IT IS ORDERED:

Circle K's motion for summary judgment, ECF No. 52, is **DENIED**.

SO ORDERED on January 8, 2014.

s/Mark E. Walker<br>United States District Judge