IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**RALPH REGINALD CAIN,**

    **Plaintiff,**

v.                                                   **CASE NO. 4:13-cv-77-MW/CAS**

**SHELL OIL CO. and
CIRCLE K STORES, INC.,**

    **Defendants.**
_____/

## **ORDER GRANTING SHELL OIL CO.'S
MOTION FOR SUMMARY JUDGMENT**

This case concerns Shell Oil Co.'s liability for a shooting and the resulting injuries to Ralph Reginald Cain that occurred at a Circle K convenience store located at 2807 South Monroe Street in Tallahassee, Florida (the "store"). The store purchased and sold Shell fuels pursuant to a wholesale marketing agreement (the "agreement"), ECF No. 24-3. Mr. Cain brought a complaint, ECF No. 26, against Shell for his injuries based on an alleged agency relationship between Shell and Circle K, and Shell filed the instant motion for summary judgment, ECF No. 50. Upon consideration of the parties' papers and exhibits, the motion is granted.[1]

---

[1] Shell also argues that it is not a party to the agreement. Inasmuch as this Court grants summary judgment on other grounds, this issue need not be addressed.

It is well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee. *See Estate of Miller v. Thrifty Rent-A-Car System, Inc.*, 637 F. Supp. 2d 1029, 1039 (M.D. Fla. 2009). However, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee . . . ." *Mobile Oil Corp. v. Bransford*, 648 So. 2d 119, 120 (Fla. 1995). The determination of whether an agency relationship exists is generally a question of fact for the jury unless the sole basis for the alleged agency rests in the interpretation of a single contract in which case the determination may be a question of law to be determined by the court. *See Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003) ("While an evaluation of a single contract may be a question of law to be determined by the court, when there are multiple relationships along with multiple practices and procedures to be evaluated, and the totality of the evidence is susceptible to multiple inferences and interpretations, the existence and scope of an agency relationship are generally questions of fact."); *Banco Espirito Santo Intern., Ltd. v. BDO Intern., B.V.*, 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a

question of fact and should be analyzed by looking at the totality of the circumstances.").

In the instant, Mr. Cain alleges in the complaint that Shell's participation in management and right to control derives from the agreement, ECF Nos. 26, ¶¶ 17, 29, 31.  Likewise, in his response to this motion, Mr. Cain argues that Shell's control derives from the agreement, ECF No. 57, ¶ 7.  Absent from the papers and exhibits are allegations or facts that any representations were made that Shell controlled or had a right to control the operations at the store or that Shell actually exercised or attempted to exercise control over the operations at the store.  *See Estate of Miller*, 637 F. Supp. 2d at 1039 ("[C]ourts are directed to presume that members of the public know that an ordinary franchise relationship is not a representation of agency.  Thus, for tort liability to attach, the franchisor must make a representation that goes beyond the basic franchise relationship 'by indicating that the franchisor was in substantial control of the business.'" (internal citations omitted)); *Bransford*, 648 So. 2d at 120 ("[I]t is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions.").  As such, the sole issue before this Court is whether the terms of the agreement create an agency relationship by contract.  Importantly, it is Shell's right to control the store, and not

whether control was actually exercised, that is crucial to determining the existence of an agency relationship. *See Villazon*, 843 So. 2d at 853; *Patterson v. Western Auto Supply Co.*, 991 F. Supp. 1319, 1323 (M.D. Ala. 1997).

First, Mr. Cain argues and this Court agrees that the labels and titles given to the parties in the agreement are not determinative of their true relationship for agency purposes. *See Villazon*, 843 So. 2d at 853-54; *Patterson*, 991 F. Supp. at 1223. Therefore, the agreement's identification of Circle K as an independent contractor with complete control over the store's operations and interpretive guidance that no terms in the agreement should be read to give Shell any right of control over operations is not determinative. ECF No. 24-3, ¶ 27.

Next, Mr. Cain's complaint and response focus on a particular set of minimum standards set forth in the agreement. He argues that Circle K's operation of the store is bound by the agreement's following minimum standards which gives Shell a right to control:

> (i) Buyer's Outlets must be kept in a clean, sanitary, and safe condition and all property and equipment kept in good operating condition and repair . . . .
>
> . . .
>
> (k) Buyer's Outlets must be kept clear of vehicles, other mobile equipment, and obstructions that restrict traffic flow, endanger customer safety, or detract from appearance . . . .
>
> (l) Buyer's Outlets must be operated in a secure manner so that criminal activity is adequately deterred from occurring there and so

4

> that all persons at Buyer's Outlets are adequately protected from injury, harm, or loss . . . .

ECF No. 24-3, ¶ 7(i), (k), (l). However, at the outset of section 7, the agreement states that the minimum standards are necessary to maintain uniformity among users of Shell's identifying marks and sellers of its fuels but that the means and manner of satisfying the minimum standards are solely within the discretion of Circle K. ECF No. 24-3, ¶ 7. Therefore, while these conditions may be interpreted to impose some control in the broadest sense over how the store is operated by establishing uniform standards, they do not give Shell control over the means by which such conditions are met. *See Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1270 (Fla. 4th DCA 2009) ("[T]he only control provided by the agreement was to insure uniformity in the standardization of products and services offered by the restaurant. The day to day operations were within the sole control of the franchisee."); *Ortega v. General Motors Corp.*, 392 So. 2d 40, 43 (Fla. 4th DCA) ("A consideration of all the provisions of the dealer franchise agreement between GMC and South Bay compels the conclusion that, as a matter of law, the method or mode of operation of South Bay's business on a day-to-day basis is controlled by South Bay as an independent contractor. South Bay, therefore, is not an agent of GMC under the dealer franchise agreement of the parties.").

While not referenced by Mr. Cain, this Court has considered a number of other provisions in the agreement including but not limited to provisions regarding

the use of Shell's identifying marks; the appearance and condition of the store and its equipment; the service provided by, appearance, and competency of employees; the promotion of and sale benchmarks for Shell fuels; the maintenance of proper insurance; and inspection rights to determine compliance with the agreement and its conditions. ECF No. 24-3. However, like the aforementioned minimum standards, the means of satisfying these conditions are left to the control and discretion of Circle K.

While not binding, this Court finds several cases instructive. For example, a sister court in Florida's Middle District previously considered a contract with similar terms and found that "[t]he most important factor, 'the extent of control which, by the agreement, the master may exercise over the details of the work,' weighs heavily against [agency] status because the agreement . . . is 'results' oriented instead of 'means' oriented." *Estate of Miller*, 637 F. Supp. 2d at 1042 (internal citation omitted). Among other terms, the agreement established conditions that the franchisee maintain clean, orderly, and safe locations; comply with franchisor's customer dispute program; maintain a full time manager; promote the business and achieve performance benchmarks; and maintain insurance. *Id.* at 1041. The court found that such conditions were typical for franchise agreements and were "left vague" so as not interfere with the

franchisee's means of satisfying the conditions or to impose substantial control over the franchisee's operation of its business. *Id.*

In contrast, under contrary facts, a sister court in Alabama's Middle District found the franchise agreement and acts of franchisor control created an issue of fact for the jury to determine the existence of an agency relationship. *Patterson*, 991 F. Supp. at 1323-25. However, the facts of *Patterson* are notably different from the instant case. Specifically, the franchise agreement in *Patterson* required the franchisee to install a store layout and design plan promulgated by the franchisor; to stock the store as directed by the franchisor; to purchase from the franchisor a program for ordering and maintaining inventory; to spend a set percentage of gross sales on advertising and to use advertising supplied or approved by the franchisor; and to use the franchisor's bookkeeping plan or another plan approved by the franchisor. *Id.* at 1324. While many other terms of the *Patterson* agreement are similar to the instant agreement, those particular terms are markedly absent from the instant agreement and provided the franchisor in *Patterson* with control over day to day business operations of the franchisee's store and detailed means of satisfying the conditions in the agreement. The instant agreement lacks such terms. Further, the court in *Patterson* recognized that the franchisor actually took actions to control the store's operations, including

7

directing the franchisee to paint, clean, and organize the store and stock and price inventory in a particular manner. *Id.* at 1324-25.

In sum, Mr. Cain relies exclusively on the agreement's terms as the basis for creating an agency relationship between Shell and Circle K. Therefore, such determination may be made by this Court as a matter of law. Upon a review of the agreement in its entirety, this Court finds that the agreement's conditions are typical of franchise agreements to establish uniformity and reasonably protect Shell's business interests. The agreement sets standards and benchmarks for the store's operation which Circle K is responsible for satisfying by its own means and in its own discretion. Shell's right to terminate the agreement, which Mr. Cain describes as a right of enforcement, is simply that--Shell's right to bind Circle K to the agreement. It in no way establishes a right to control the store's operations. Stated otherwise, Shell's right is only to terminate or not to terminate the agreement, and there is no intermediate right reserved to Shell to impose its own means or use its own discretion to satisfy the agreement's conditions.

For these reasons,

IT IS ORDERED:

Shell's motion for summary judgment, ECF No. 50, is **GRANTED.** This Court does not direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

**SO ORDERED on January 10, 2014.**

**s/Mark E. Walker**
**United States District Judge**
